

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2008

# Johnson v. Tennis

Precedential or Non-Precedential: Precedential

Docket No. 07-1968

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Johnson v. Tennis" (2008). *2008 Decisions.* Paper 180.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/180

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1968
_____

GARY JOHNSON,

Appellant

v.

FRANKLIN TENNIS, SUPERINTENDENT; THE
DISTRICT ATTORNEY OF THE COUNTY OF
PHILADELPHIA; THE ATTORNEY GENERAL OF
THE STATE OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-00778)

District Judge: Honorable Norma L. Shapiro

_____

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
on September 12, 2008

Before: SLOVITER, FUENTES and ALDISERT,
Circuit Judges

(Filed November 19, 2008)

Cheryl J. Sturm, Esq.
387 Ring Road
Chadds Ford, PA 19317

    Counsel for Appellant

Joshua S. Goldwert
    Assistant District Attorney
    (Counsel of Record)
Thomas W. Dolgenos
Ronald Eisenberg
Arnold H. Gordon
Lynne Abraham
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107

    Counsel for Appellees

OPINION OF THE COURT

ALDISERT, Circuit Judge.

2

This appeal by Gary Johnson from the denial of his petition for habeas corpus by the District Court of the Eastern District of Pennsylvania requires us to decide an issue of first impression in this Circuit: Do the teachings of Bruton v. United States, 391 U.S. 123 (1968), apply to a bench trial in a criminal proceeding? Bruton and its progeny established that in a joint criminal trial before a jury, a defendant's Sixth Amendment right of confrontation is violated by admitting a confession of a non-testifying codefendant that implicates the defendant, regardless of any limiting instruction given to the jury. See id.; Richardson v. Marsh, 481 U.S. 200, 211 (1987); Cruz v. New York, 481 U.S. 186, 193-194 (1987). We hold that the <u>Bruton</u> rule is inapplicable to the incriminating confession of a non-testifying codefendant in a joint bench trial. By its own terms, <u>Bruton</u> applies to jury trials only. In so deciding we agree with every United States Court of Appeals that has considered the question.[1] Because of this threshold determination, we easily dispose of Johnson's claims that he was denied the effective

---

[1] See, e.g., United States v. Castro, 413 F.2d 891, 894-895 & n.7 (1st Cir. 1969), cert. denied, 397 U.S. 950 (1970); United States v. Cardenas, 9 F.3d 1139, 1154-155 (5th Cir. 1993); Rogers v. McMackin, 884 F.2d 252, 255-257 (6th Cir. 1989); United States ex rel. Faulisi v. Pinkney, 611 F.2d 176, 178 (7th Cir. 1979); Cockrell v. Oberhauser, 413 F.2d 256, 257-258 (9th Cir. 1969); see also 21A Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5064.2, at 290 & n.5 (2d ed. 2005 & Supp. 2007).

assistance of counsel under Strickland v. Washington, 466 U.S. 686 (1984).[2]

Our review is limited to those issues approved by this Court in issuing a Certificate of Appealability: (1) whether Johnson was denied the right to effective assistance of trial and appellate counsel where trial counsel failed to litigate a motion for severance under Bruton and appellate counsel failed to raise the severance issue on appeal; (2) whether Johnson was denied the right to effective assistance of trial counsel where trial counsel failed to move the trial judge to recuse himself; and (3) whether the Superior Court's determination of these issues was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The merits of this habeas appeal are further circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254. When, as here, the legal claims of a petitioner in custody pursuant to a

---

[2] To establish constitutionally ineffective assistance of counsel, a petitioner must show both that counsel's performance was so unreasonably deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that this deficient performance was so prejudicial "as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Review is highly deferential and there is a strong presumption that counsel's conduct falls within the range of reasonable professionalism. Id. at 689.

state court judgment have been adjudicated on the merits in state court proceedings, under § 2254(d)(1) the "only question that matters" is whether the adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." Lockyer v. Andrade, 538 U.S. 63, 71 (2003); 28 U.S.C. § 2254(d)(1).

## I.

Because this appeal raises only questions of law, we set forth a brief description of the facts in the margin.[3] Appellant

---

[3] Appellant Gary Johnson and co-conspirator Shawn Davis arrived at the IPI Club, an after-hours nightclub, sometime around 2:00 a.m. on January 21, 1991. At approximately the same time, Alphonso Broadnax (the victim) and Antoine DeLoach also arrived at the club. Shortly thereafter, Johnson and DeLoach bumped into each other on the dance floor and exchanged words. Both Broadnax and Davis approached the altercation, but matters seemed to diffuse and the parties parted ways.

DeLoach and Broadnax subsequently decided to leave the club fearing trouble between the parties upon witnessing a separate altercation between Davis and another man. DeLoach stopped at the restroom as Broadnax headed towards DeLoach's vehicle, parked across the street from the IPI Club. At approximately the same time, witnesses Desiree Feaster, Sharon Johnson, Michele Green and Vernell Washington were entering Feaster's car, parked by the IPI Club. The witnesses observed Johnson and Davis in the same area. Washington additionally

Gary Johnson and co-conspirator Shawn Davis were found guilty of second degree murder and criminal conspiracy after a bench trial in the Common Pleas Court of Philadelphia. Each gave conflicting statements to the police implicating the other. Davis sought to suppress his statement but the state trial judge, Judge Latrone, denied his motion. At the behest of Johnson's defense counsel, Judge Latrone did, however, order that the statement be redacted prior to presentation to the court by substituting an "X" in place of Johnson's name.

At the joint non-jury trial of both Johnson and Davis, also held before Judge Latrone, the statement was only admitted against Davis, not Johnson. The trial judge found Johnson guilty of murder in the second degree and of conspiracy. At trial, Johnson was represented by Bernard Turner. After attorney Turner withdrew his appearance, attorney Louis Savino entered his appearance and filed post-trial motions. These motions were denied and Johnson was sentenced on February 9, 1995, to life imprisonment for murder in the second degree and a concurrent term of one to two years for criminal conspiracy.

Following Johnson's conviction, Judge Latrone wrote an

overheard a conversation between Johnson and Davis about wanting to get "the guy with the money."

As Johnson and Davis passed Feaster's vehicle, the witnesses observed Davis holding a gun as he headed in the direction of Broadnax, who was then about to enter DeLoach's vehicle. Davis shot the victim, Broadnax, five times.

6

extensive opinion in which he addressed the Bruton issue raised by Johnson in post-trial motions, stating: "The primary reasoning behind the Bruton Court's decision was that there was a tremendous risk due to the practical and human limitations of a jury that it would or could not follow instructions to disregard the prejudicial statements of a codefedant at a joint trial." Commonwealth v. Johnson, No. 3393, 3397, Feb. Term. 1991, slip op. at 27 (C.P. Phila. Oct. 30, 1995) (Latrone, J.) ("Trial Ct. Op."). Judge Latrone explained that the teachings of Bruton could not be applied to Johnson's case because "this Court presided over a trial without a jury" and that "the risks inherent in the jury system of which the Bruton Court was so concerned would seemingly not exist when a judge is sitting as a trier of fact." Id. at 28.

On appeal, the Superior Court of Pennsylvania in a memorandum disposition adopted the trial court's opinion "in its entirety and affirm[ed] on the basis of the opinion of the trial court." Commonwealth v. Johnson, No. 3264, slip op. at 3 (Pa. Super. Ct. August 19, 1998); Commonwealth v. Johnson, 727 A.2d 412 (Pa. Super. Ct. 1998). Similarly, on a subsequent appeal from the Common Pleas Court denying Johnson's petition for post-conviction relief, the Superior Court in a memorandum disposition adopted in full several pages of the post-conviction judge's opinion explaining that the teachings of Bruton could not apply because the stated rationale of the United States Supreme Court limited its application only to jury trials in criminal cases. Commonwealth v. Johnson, No. 3264, slip op. at 5-9 (Pa. Super. Ct. April 13, 2004); Commonwealth

7

v. Johnson, 852 A.2d 1248 (Pa. Super. Ct. 2004).

## II.

The Bruton rule is inapplicable to the incriminating confession of a non-testifying codefendant in a joint bench trial because Bruton applies solely to jury trials. In so deciding, we join the myriad Courts of Appeals that have recognized that the rule and rationale of Bruton do not apply to bench trials.[4] See,

---

[4] The basis of <u>Bruton</u> was that even a carefully instructed jury cannot be expected to disregard completely the incriminating confession of a non-testifying codefendant:

> [T]here are some contexts in which the risk that the jury will not, or cannot follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the

8

e.g., Castro, 413 F.2d at 895 n.7 ("A jury may have difficulty in disregarding extrajudicial statements implicating a defendant. We will not presume that a judge suffers from the same disability. Indeed, the presumption is to the contrary."); Cardenas, 9 F.3d at 1154 ("Nothing in Bruton, or in later Supreme Court cases discussing Bruton, suggests that in a bench trial a judge is incapable of disregarding inadmissible extrajudicial statements implicating a defendant."); Rogers, 884 F.2d at 257 ("To apply Bruton to bench trials would be to conclude that judges, like jurors, may well be incapable of separating evidence properly admitted against one defendant from evidence admitted against another."); Faulisi, 611 F.2d at 178 (Bruton "is simply inapplicable in the case of a bench trial."); Cockrell, 413 F.2d at 258 ("The Bruton rule does not apply to [petitioner] because she was tried by the court and not by a jury. Nothing in Bruton suggests that a judge is incapable of applying the law of limited admissibility which he has himself announced."); see also 21A Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure §

---

alleged accomplice . . . does not testify and cannot be tested by cross examination.

Bruton, 391 U.S. at 135-136. See also id. at 137 ("[I]n the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination.").

5064.2, at 290 & n.5 (2d ed. 2005 & Supp. 2007) ("[B]ecause Bruton seeks to protect the defendant against the inability of the jury to understand or abide by limiting instructions, the Bruton doctrine does not apply in cases tried to the court.").

We also join the Cardenas and Rogers courts in rejecting the notion that Lee v. Illinois, 476 U.S. 530 (1986), expanded the Bruton doctrine to encompass bench trials. Lee dealt with whether a state trial judge's reliance upon a codefendant's incriminating pre-trial confession in a bench trial violates the right to confrontation, not, as in Bruton, whether the mere admission of such a confession is a violation. Id. at 531. The Court accordingly observed that Lee was "not strictly speaking a Bruton case." Id. at 542. Bruton, the Court explained, was based "on the fact that a confession that incriminates an accomplice is so . . . 'devastating' that the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied." Id. In contrast, in Lee the question was not whether the judge had been able to disregard the evidence, but whether the judge's actual use of the incriminating confession was permissible; the Court concluded that it was not.

The holding of Lee is thus distinguishable from, and does not expand the reach of, Bruton. "[A]bsent an *express* reliance by a trial judge on a non-testifying defendant's pre-trial confession--which facially implicates a co-defendant--in determining that co-defendant's guilt, we do not see how a Sixth Amendment confrontation issue can arise in a bench trial. No such express reliance exists in the instant case." Cardenas, 9

10

F.3d at 1155. See also Rogers, 884 F.2d at 257 ("Lee simply did not make Bruton applicable to bench trials.").

III.

Because Bruton does not apply to a bench trial, Johnson cannot have been deprived of any constitutional right based on Bruton. Accordingly, trial counsel was not ineffective for failing to make a pretrial motion for severance after the redacted statement of Johnson's non-testifying codefendant was admitted into evidence, and the Pennsylvania Superior Court's adjudication of this issue was not contrary to, or an unreasonable determination of, Supreme Court precedent.

The Superior Court reasonably and correctly rejected the application of Bruton to Johnson's joint bench trial, therefore eliminating any argument that trial counsel should have moved for severance to avoid constitutional problems under Bruton. The Superior Court adopted in full the trial court opinion by Judge Latrone, which stated that "the risk of prejudice that comes with the admission of a non-testifying codefendant's confession at a joint trial is greatly reduced, if not eliminated, when the case is tried before a judge sitting without a jury." Trial Ct. Op. at 30. Judge Latrone explained that he disregarded the codefendant's statement in determining petitioner's guilt, and that the trial court "predicated its decision solely on the properly admitted statement of Johnson and the other directly relevant evidence presented by the Commonwealth" and "was unaffected by the statement of the codefendant which it knew was inadmissable against him." Id. at 30-31.

We dismiss Johnson's contentions that severance would

11

have eliminated the complaint that Davis's confession was not properly redacted and that the Superior Court acted contrary to established federal law by failing to address Gray v. Maryland, 523 U.S. 185 (1998), in its affirmation of conviction. The Supreme Court in Gray, in a decision decided six months prior to the Superior Court's affirmation of Johnson's conviction, established that redactions in a <u>Bruton</u> case that replace a proper name with a symbol, or similarly signify to the jury the fact of redaction, are similar enough to unredacted confessions to violate the Confrontation Clause. The inapplicability of <u>Bruton</u> to bench trials, however, renders the question of whether Davis's statement was properly redacted under <u>Bruton</u> and <u>Gray</u> a nonissue.

It further is highly unlikely that the trial court would have granted a severance at petitioner's trial given the strong interest courts have in maintaining joint trials. See id. at 209 ("Joint trials play a vital role in the criminal justice system[.]"). Public interest in judicial economy favors joint trials where, as in Johnson's case, the same evidence would otherwise be presented at separate trials of defendants charged with a single conspiracy. <u>United States v. Eufrasio</u>, 935 F.2d 553, 568 (3d Cir. 1991). Johnson nevertheless contends that "[i]f [his] trial attorney had requested a severance, and if the severance had been granted, there was a 'reasonable probability' the Commonwealth would have dropped the charges against Johnson for lack of evidence. Otherwise, there was a 'reasonable probability' of an acquittal because the evidence against Johnson was practically non-existent." Appellant's Br. at 27. This argument not only borders

12

on, but is truly ridiculous. The Superior Court reasonably found that the evidence against Johnson was substantial, and the Superior Court's rejection of an ineffective assistance claim based on failure to move for severance pursuant to Bruton was reasonable under, and not contrary to, established federal law.

IV.

It follows that Johnson's derivative claim of ineffective assistance of appellate counsel also fails. The Superior Court's adjudication of Johnson's claim that appellate counsel was ineffective for failing to contend on appeal that trial counsel was ineffective for failing to move for severance, cannot be considered contrary to, or an unreasonable determination of, Supreme Court precedent. The Supreme Court has repeatedly admonished that appellate counsel need not, and should not, raise every non-frivolous claim, but rather may select from them in order to maximize the likelihood of success on appeal. Smith v. Robbins, 528 U.S. 259, 288 (2000). Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that "there is no merit to any of them." Ruggero J. Aldisert, The Appellate Bar: Professional Responsibility and Professional Competence–A View From the Jaundiced Eye of One Appellate Judge, 11 Cap. U. L. Rev. 445, 458 (1982).

Here, there was minimal likelihood of success on an ineffective assistance claim based on trial counsel's failure to

13

move for severance. It is far-fetched to contend that on direct appeal the state courts would have found that trial counsel was constitutionally ineffective for failing to move for severance under Bruton, a constitutional rule inapplicable to bench trials. Furthermore, the Superior Court determined on direct appeal that Johnson was not prejudiced by the trial judge's non-recusal (see *infra* Part V). As the Superior Court concluded on Johnson's post-conviction appeal, this determination is flatly inconsistent with Johnson's contention that, in the same appeal, the Superior Court would have held that Johnson was prejudiced by trial counsel's failure to seek severance as a result of the trial judges's same pre-trial exposure to Davis's statement. Given the weakness of Johnson's ineffective assistance of trial counsel claim, it would be difficult to consider appellate counsel unreasonably deficient for failing to raise it.

V.

Finally, Johnson was not denied the right to effective assistance of trial counsel where trial counsel failed to move the trial judge to recuse himself, and the Superior Court's determination of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

Johnson's contention is based on the trial judge's participation in a suppression hearing prior to the joint bench trial. Prior to trial, Judge Latrone acknowledged before the parties and their counsel that he had been exposed to some evidence in Johnson's codefendant's pre-trial motion to suppress, but he indicated he did not remember exactly what that

14

evidence was. After codefendant Davis's counsel reminded him that it was Davis's statement to the police that had been presented for suppression, Judge Latrone, in the presence of Johnson, provided Davis with a thorough explanation of his right to request the judge to recuse himself. Judge Latrone then received Davis's waiver of recusal. Then the judge stated directly to Johnson that in Johnson's case there should be no problem because he had been the pre-trial judge in Davis's case but not Johnson's case.

Given that Johnson heard the trial judge explain a defendant's right to request recusal and Johnson did not thereafter express concern to the trial court about proceeding to trial with the same judge who presided over that motion to suppress, it was reasonable for his counsel not to ask for recusal of the trial judge. Indeed, in an evidentiary hearing on Johnson's post-trial motions, his trial counsel stated that he strategically chose not to request recusal because he "felt that [Johnson's] best opportunity for a fair trial would have been with this judge who heard the evidence and was experienced to sift [through it] and give my client a fair trial." App. 299-300. We grant great deference to counsel's choice of trial strategy. Strickland, 466 U.S. at 689.

Furthermore, even if a recusal motion had been made and granted, recusal of Judge Latrone would not have removed the evidence from the case: the same redacted statement would have been presented to any presiding judge. It thus would have been fruitless to make a motion for recusal in the hope that the new

15

judge would somehow not hear the redacted statement that previously had been ruled admissible. Counsel cannot be found ineffective for failing to bring meritless motions. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

* * * * * *

For the foregoing reasons, the order of the United States District Court for the Eastern District of Pennsylvania denying Johnson's petition for writ of habeas corpus will be affirmed.

16