**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4201
_____

CHRISTOPHER SWEET,

Appellant

v.

FRANKLIN TENNIS, SUPERINTENDENT; THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(07-cv-5349)
District Judge:  Honorable Edmund V. Ludwig

_____

No. 08-4359
_____

JEFFREY SWEET,

Appellant

v.

JOHN KERESTES, SUPERINTENDENT; THE DISTRICT ATTORNEY OF THE
COUNTY OF PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(07-cv-5381)

District Judge:  Honorable Edmund V. Ludwig

Argued June 3, 2010

Before: AMBRO, CHAGARES, and VAN ANTWERPEN, Circuit Judges.

(Filed July 12, 2010)

_____

OPINION OF THE COURT
_____

Teri B. Himebaugh (Argued)
220 Stallion Lane
Schwenksville, PA 19473
        *Counsel for Appellants*

John W. Goldsborough (Argued)
Thomas W. Dolgenos
Ronald Eisenberg
Joseph McGettigan, III
R. Seth Williams
3 South Penn Square
Philadelphia, PA 19107
        *Counsel for Appellees*

CHAGARES, Circuit Judge.

Petitioners Christopher Sweet and Jeffrey Sweet appeal from the District Court's

order dismissing their petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

We will affirm.

I.

Because we write solely for the benefit of the parties, we will only briefly

summarize the essential facts.  In the early morning hours of March 23, 2001, several

individuals masquerading as police officers and carrying handguns robbed an establishment in the Chinatown area of Philadelphia that was purportedly a house of prostitution. Actual Philadelphia police officers, on alert due to a similar robbery of the same location that occurred several weeks earlier, arrived within minutes. They apprehended six individuals, the two petitioners in this case along with Luis Melendez, Manuel Melendez, Jose Medina, and Dixon Rivera. The petitioners were taken to the Philadelphia Police Central Detectives' Division, where they provided written statements confessing to their involvement in the crime. Both petitioners were charged with robbery, aggravated assault, criminal conspiracy, burglary, and possessing an instrument of crime, and Christopher was also charged with carrying a firearm without a license.

Prior to trial, the petitioners moved to suppress the statements they made to the police, contending that the statements were involuntary and obtained in violation of their rights under Miranda v. Arizona, 384 U.S. 436 (1966). After a lengthy hearing, the trial court denied their motions, holding that each petitioner had confessed voluntarily and knowingly and voluntarily waived his Miranda rights. The trial court found that neither petitioner was suffering from any medical condition that would have impaired his ability to waive his rights or provide a voluntary statement to police. The trial court also found that Christopher was given an opportunity to take his anti-seizure medication when he asked for it during questioning. The petitioners proceeded to trial and were convicted on all counts.

After their convictions were affirmed on direct appeal, the petitioners filed petitions for relief pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq. Their PCRA petitions raised several issues, including the two issues raised in the habeas petitions currently before this court. They argued that their Miranda waivers and subsequent confessions were involuntary, and that appellate counsel was ineffective for failing to raise and preserve this issue. They also argued that trial counsel was ineffective for failing to present medical evidence and expert testimony to support their motions to suppress and to challenge the voluntariness of their confessions before the jury. In support of this claim, they submitted a letter report from Dr. Lawson Bernstein, M.D., P.C., a forensic neuropsychiatrist. Dr. Bernstein opined that the petitioners would have lacked the cognitive capacity to make a knowing and voluntary waiver of their rights. His report assumed that both petitioners had been deprived their anti-seizure medications, and it was based exclusively on the records that he had been provided; he did not personally evaluate the petitioners. The PCRA court rejected the petitioners' claims, concluding that their confessions were voluntary. The PCRA court also found that medical evidence or expert testimony regarding the petitioners' medical condition would not have changed the outcome of the proceedings and that the evidence establishing each petitioner's guilt was "overwhelming." The Pennsylvania Superior Court affirmed the dismissal of the petitioners' PCRA petitions, adopting the reasoning of the PCRA court in all respects.

4

The petitioners filed petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in District Court. Their petitions were referred to a Magistrate Judge, who issued a Report and Recommendation ("R&R") recommending that the petitions be denied. Over the petitioners' objections, the District Court adopted the R&R and denied the petitions without a hearing. The petitioners requested certificates of appealability, and we certified two issues for appeal.

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. When a district court dismisses a § 2254 petition "based on a review of the state court record without holding an evidentiary hearing," we apply a plenary standard of review. Fahy v. Horn, 516 F.3d 169, 179 (3d Cir. 2008).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") curtailed the scope of federal habeas corpus review of state court decisions. For any claim that is "adjudicated on the merits" in state court proceedings, federal habeas corpus relief is precluded unless such adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) and (2); see Werts v. Vaughn, 228 F.3d

5

178, 196 (3d Cir. 2000).  The Supreme Court has explained that a "state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"  Penry v. Johnson, 532 U.S. 782, 792 (2001) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "A state court decision will be an 'unreasonable application of' our clearly established precedent if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'"  Id. (quoting Williams, 529 U.S. at 407-08).  AEDPA also provides that "[f]actual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence."  Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

III.

The petitioners raise two arguments on appeal.  First, they contend that their medical conditions rendered their confessions involuntary, and thus inadmissible under Miranda and the Due Process Clause of the Fourteenth Amendment.  Second, they argue that trial counsel provided constitutionally defective assistance by failing to present expert testimony regarding their medical conditions.  The parties agree that these claims were exhausted and adjudicated on their merits in state court, so the deferential AEDPA standard of review applies to both claims.

6

A.

The petitioners first argue that their confessions were involuntary, challenging their admission under both Miranda and the Due Process Clause. Under Miranda, a criminal defendant may only waive his Fifth Amendment right to have an attorney present during custodial interrogation if "the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444. A valid Miranda waiver has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)). "The ultimate question in the voluntariness calculus is 'whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution.'" Fahy, 516 F.3d at 194 (quoting Miller v. Fenton, 474 U.S. 104, 112 (1985)). Federal habeas courts have an "independent obligation" to determine whether a confession was voluntary. Miller, 474 U.S. at 110. Although this Court defers to state court fact-finding on "subsidiary factual questions" under 28 U.S.C. § 2254(e)(1), the "ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination."

7

Miller, 474 U.S. at 112.

In this case, the trial court's factual findings on the relevant subsidiary issues leave little room for the petitioners' argument that they did not voluntarily waive their Miranda rights. For Christopher's confession, the trial court credited Detective Kerwin's testimony that he stopped the interrogation so that Christopher could take his medication and rejected Christopher's testimony to the contrary. The trial court credited Detective Kerwin's testimony that Christopher "did not appear groggy or his demeanor did not in any way indicate that he was suffering from . . . any physical or mental disability that would affect his ability to understand what was said to him and to respond to what was said to him or to make a decision as to whether or not he wished to make a statement." Supplemental Appendix ("S.A.") 397. The trial court found that Christopher's statement did not "indicate someone who was either unable to speak or to speak in a logical and coherent fashion." Id. Noting that the statement was taken in the "early morning hours . . . shortly after the defendant indicated he would have expected to take his medication," the trial court concluded that the evidence did not establish that Christopher was "suffering from the effects of not having had his medication." S.A. 397-98.

For Jeffrey's confession, the trial court similarly found that Jeffery was not suffering from any effects of his epilepsy or anxiety when he made his statement to police. The trial court found that Jeffrey only suffered his seizure much later in the day, after the statement was complete. S.A. 399. Although Jeffrey was not given any

8

medication, he was given food to eat, and his statement does not "give rise to any inference" that he was unable "to speak coherently . . . or logically in response to the questions that were asked." S.A. 399-400. The trial court credited Detective Kerwin's testimony that he "appeared to understand and be able to speak and to respond to the questions and [that] he seemed fine during the time of answering the questions . . . ." S.A. 400. The trial court therefore determined that neither petitioner was suffering from any disabling medical condition when he waived his Miranda rights.

To rebut these findings, the petitioners submitted a two-page report from Dr. Bernstein. In this report, Dr. Bernstein opines that the petitioners "[l]acked the cognitive capacity to make a knowing and voluntary waiver of their rights." Joint Appendix ("J.A.") 56. At least as it pertains to Christopher, however, Dr. Bernstein's conclusion is premised on factual assumptions that the trial court found to be inaccurate. The letter presumes that both petitioners "were deprived of their antiseizure medications during the period of their interrogation," id., but the trial court found that Christopher was given his medication when he requested it. Dr. Bernstein's report is less obviously flawed with respect to Jeffrey's case, but we agree with the District Court that the two-page report falls short of the "clear and convincing" standard required to rebut the trial court's factual finding that Jeffrey was not suffering from any such condition. 28 U.S.C. § 2254(e)(1). As explained in the R&R, "Dr. Bernstein's opinion, based as it is on the same records the jury saw, does not raise the quantum of proof to the clear and convincing plateau

9

necessary to rebut the trial court's finding that Jeffrey was not suffering from epilepsy symptoms when he waived his <u>Miranda</u> rights and gave his statement." J.A. 19 n.10.

The petitioners also argue that their confessions were obtained in violation of their due process rights. The Supreme Court has "long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." <u>Miller</u>, 474 U.S. at 109. "It is clear that 'only voluntary confessions may be admitted at the trial of guilt or innocence' . . . ." <u>United States v. Swint</u>, 15 F.3d 286, 288-89 (3d Cir. 1994) (quoting <u>Lego v. Twomey</u>, 404 U.S. 477, 478 (1972)). "[C]ourts look to the totality of circumstances to determine whether a confession was voluntary. Those potential circumstances include not only the crucial element of police coercion; the length of the interrogation; its location; its continuity; the defendant's maturity; education; physical condition; and mental health." <u>Withrow v. Wilson</u>, 507 U.S. 680, 693 (1993) (citations omitted).

The petitioners argue that their confessions were involuntary because they were obtained while they were suffering from mental problems related to epilepsy. Although a defendant's mental condition may serve as a "significant factor in the 'voluntariness' calculus," the defendant's mental condition, "by itself and apart from its relation to official coercion, should [never] dispose of the inquiry into constitutional

10

'voluntariness.'" Colorado v. Connelly, 479 U.S. 157, 164 (1986). "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." Id. at 165. The Supreme Court has therefore held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167.

In this case, there is no evidence to suggest that the detectives who interrogated the petitioners resorted to coercive tactics or exploited the petitioners' medical condition in any way. Although both petitioners testified that they were suffering symptoms related to their epilepsy, the trial court credited Detective Kerwin's testimony that neither petitioner appeared to be suffering from any medical condition, and that both petitioners appeared to comprehend everything that was occurring. S.A. 397, 400. The trial court also credited Detective Kerwin's testimony that Christopher was permitted to take his epilepsy medication upon request. S.A. 392. In Jeffrey's case, nothing in the record suggests that the detectives who interrogated the petitioners were aware of his condition, much less that they somehow took advantage of his situation in their interrogation.

The petitioners rely on two cases in which the Supreme Court held that mental illness, combined with other factors, can render a confession involuntary even in the absence of physical coercion by the police. Blackburn v. Alabama, 361 U.S. 199 (1960); Fikes v. Alabama, 352 U.S. 191 (1957). Neither case establishes, however, that the

11

petitioners' confessions were involuntary in this case. In Blackburn, the Court concluded that the defendant was "insane and incompetent at the time he allegedly confessed" and highlighted the coercive characteristics of the confession: "the eight- to nine-hour sustained interrogation in a tiny room which was upon occasion literally filled with police officers; the absence of Blackburn's friends, relatives, or legal counsel; [and] the composition of the confession by the Deputy Sheriff rather than by Blackburn." 361 U.S. at 207-08. Similarly, in Fikes, the Court emphasized several important factors beyond the defendant's mental condition: the interrogation took place for hours at a time over the course of five days; he was taken to a state prison and held in an isolation unit; he was denied access to a lawyer and his father, who attempted to see him; and he was detained without receiving the preliminary hearing required by state law. 352 U.S. at 196-97.

These elements of police coercion are not present here. The entire questioning process for both petitioners took only a few hours, and the record indicates that each petitioner was willing to volunteer information from the outset. In fact, Christopher volunteered his involvement before the detectives began interrogating him, and Jeffrey agreed to provide a statement immediately after speaking with Christopher. The petitioners were questioned in a standard interview room, with only two detectives present. There is no evidence that they were unreasonably isolated, or that attempts at contact by their lawyers or family members were thwarted. The statements were recorded in Detective Kerwin's handwriting, but there is no evidence that the factual details

12

included in the confession were supplied by the police. In short, there is simply no evidence in the record to indicate any degree of coercion beyond the most basic police interrogation techniques. According the state courts' factual findings the proper amount of deference, we cannot conclude that the trial court's decision admitting the petitioners' confessions was contrary to, or involved an unreasonable application of, clearly established federal law.

B.

The petitioners also argue that their trial counsel provided constitutionally defective assistance of counsel by failing to present medical testimony regarding the effect that their epileptic conditions may have had on their ability to waive their Miranda waivers and provide statements to the police voluntarily. To succeed on this claim, the petitioners "must show that the state court's decision is either contrary to, or involves an unreasonable application of, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984)." Fahy, 516 F.3d at 197-98. The Strickland test has two components: "First, the defendant must show that counsel's performance fell below an objective standard of reasonableness, 466 U.S. at 688, and second, the defendant must show he was actually prejudiced by counsel's deficient performance. Id. at 687." Werts, 228 F.3d at 203. Our review of trial counsel's effectiveness is "highly deferential and there is a strong presumption that counsel's conduct falls within the range of reasonable professionalism." Johnson v. Tennis, 549 F.3d 296, 298 n.2 (3d Cir. 2008) (citing Strickland, 466 U.S. at

689). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. To establish actual prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The PCRA court rejected the petitioners' ineffective assistance claims because it determined that the petitioners were not prejudiced by the failure to elicit medical testimony. The court concluded that the petitioners' "assertion that expert testimony or other medical evidence would have changed the outcome is baseless." S.A. 1571, 1635. It further concluded that such evidence could not have changed the outcome at trial because the evidence establishing each the petitioners' guilt was "overwhelming." Id. For Jeffrey's conviction, the PCRA court highlighted the testimony of Officer Brady and Sergeant Wilson that Jeffrey yelled "oh shit" and discarded his mask upon seeing the police officers. S.A. 1636. For Christopher's conviction, the PCRA court emphasized Sergeant Jackson's testimony that he observed Christopher holding an Asian woman as a shield before shoving the woman and fleeing out of the building. S.A. 1572. The court also pointed out that Christopher was apprehended with a hand gun, latex gloves, several coats, and $663 in cash. Id. In both cases, the PCRA court concluded that "[a]dditional evidence concerning the voluntariness of the defendant's statement would not have

14

changed the outcome." S.A. 1572, 1636.

The PCRA's court application of the Strickland prejudice standard was not unreasonable. The government introduced significant evidence establishing the petitioners' involvement in the crimes and corroborating their confessions. Morever, their attorneys were able to raise the issue of their medical condition at both the suppression hearing and trial. Under these circumstances, the PCRA court reasonably determined that this additional evidence would not have changed the outcome at trial.

The petitioners also argue that medical testimony may have changed the outcome of the suppression hearing. On this point, the petitioners argue that medical testimony was essential to prove that their statements were not voluntary. Although medical testimony may certainly support such a position, we have rejected the contention that trial counsel is automatically ineffective for failing to present such evidence. Reinert v. Larkins, 379 F.3d 76, 95 (3d Cir. 2004). Under Pennsylvania law, "trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony." Id. (citing Commonwealth v. Williams, 640 A.2d 1251, 1265 (Pa. 1994)). In this case, trial counsel was able to raise this issue through the petitioners' own testimony and Jeffrey's medical records. Even though expert testimony may have given the petitioners a stronger argument that their confessions were involuntary, the PCRA court's conclusion that such testimony would not have changed the analysis of the voluntariness issue was not unreasonable.

15

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.