NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 16-3535

AARON KELLY,

Appellant

v.

SUPERINTENDENT GRATEFORD SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-13-cv-04317)
District Judge: Honorable John R. Padova

Argued on November 15, 2017

Before: AMBRO, KRAUSE, and RENDELL, <u>Circuit Judges</u>

(Opinion filed: December 21, 2017)

Michael Wiseman, Esquire (Argued)
PO Box 120
Swarthmore, PA 19081

    Counsel for Appellant

John W. Goldsborough, Esquire (Argued)
Max C. Kaufman, Esquire
Susan E. Affronti, Esquire
Ronald Eisenberg, Esquire
John Delaney, Esquire
Kelley Hodge, Esquire
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA   19107

Counsel for Appellees

O P I N I O N[*]

RENDELL, Circuit Judge:

In 2006, following a bench trial in the Court of Common Pleas of Philadelphia County, Appellant Aaron Kelly was convicted of the murder of Steven Michael Clark. The only incriminating evidence the Commonwealth presented at trial was a subsequently recanted police statement from an unavailable witness.  Kelly alleges his trial counsel was ineffective, based on (1) counsel's failure at trial to re-assert a Confrontation Clause objection to the admission of the unavailable witness' police statement and preliminary hearing testimony; and (2) counsel's failure to object to the Commonwealth's repeated references to an absent purported second eyewitness to the crime.  The District Court denied him leave to amend his § 2254 habeas petition to add these two claims, finding them untimely.  He appeals, urging us to hold that this denial

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

was erroneous.  But Kelly has not shown harm and prejudice under *Strickland v. Washington* for either underlying ineffective assistance claim.  He therefore cannot satisfy the myriad other standards for obtaining habeas relief from this Court.[1]  For the reasons that follow, we will affirm the District Court's denial of leave to amend his habeas petition.

## I. BACKGROUND

### a. Police investigation

In 2003, Steven Michael Clark was fatally shot in the middle of the day on a Philadelphia street corner.  Six days later, homicide detectives spoke with 17-year-old Mason Staten.  Detective George Fetters took Staten's written statement, in which he detailed how, after leaving a local store, he heard two loud pops.  He identified Kelly, by name and photograph, as having shot the victim three or four times after the initial two shots, then firing three or four more times at close range, standing over the victim's body.  He also said that a young woman nicknamed Nee-Nee (Jeannine "Nay-Nay" Wharton) witnessed the crime and ran toward Kelly shouting "what are you doin, what are you doin!" as he fired the gun.  S.A. 118.  Staten signed the statement and photo arrays.  Police then arrested Kelly.

### b. Preliminary Hearing

---

[1] As noted *infra,* the District Court denied Kelly relief based on AEDPA's time bar.  We do not address this issue, but instead assume timeliness and will decide the appeal based on the merits of Kelly's two claims.

3

At the preliminary hearing, Kelly was represented by Steven Jarrett. Staten testified for the Commonwealth, but, on the stand, he recanted his statement to the police. While eventually he admitted to having been at the Homicide Unit and identifying the victim's photo, he denied identifying Kelly as the shooter, identifying his photo, or making his statement to the police. The Commonwealth impeached him with his prior inconsistent police statement.

On cross-examination, Kelly's counsel asked why Staten was brought to the Homicide Unit. Counsel elicited his testimony that he was brought in on a bench warrant, and that detectives took him to Homicide, where they asked him about his brother, Rahein Staten. He further admitted to Kelly's counsel that the detectives told him that "they were interested in [his] brother," that he "could help [his] brother out," and if he "want[ed] to help [his] brother out [he would] remember this stuff." A. 79–80.

Staten also testified that he had not read over the statement he gave, and that he only gave it because he felt pressured. On redirect, the Commonwealth drew out that he did indeed know Kelly. The Commonwealth then asked if he was "[s]cared of the defendant," and Staten responded that he was not. A. 81.

The Commonwealth also responded to his recantation by presenting Detective Fetters' testimony. Fetters explained the circumstances under which Staten gave the statement. He said he did not know why Staten was brought in, that he did not know that Staten had a brother, and that he did not suggest that cooperating with police would help his brother. He further "denied that he had coerced, intimidated, or pressured Staten." A. 12. Kelly was bound over for trial.

4

*c. Pre-trial developments*

After the preliminary hearing, Kelly's case was designated as capital. The Court appointed David Rudenstein to replace Jarrett as lead counsel, and appointed Gary Server to assist at the sentencing phase. A trial date was set for March 14, 2005 before Judge Renee Cardwell Hughes. But trial did not occur on that date because Mason Staten was murdered four days before the trial was set to begin.

The Commonwealth requested a hearing to determine whether Staten's preliminary hearing testimony could be introduced at trial, and whether Detective Fetters could explain the circumstances surrounding Staten's statement to police. At the unavailability hearing, Kelly argued that he did not have a full and fair opportunity to cross-examine Staten. Nevertheless, the Trial Court ruled that the Commonwealth was permitted to present Staten's testimony and his police statement.

*d. Bench trial*

Kelly waived his right to a jury,[2] and his case proceeded as a bench trial. Detective Ismael Cruz testified for the Commonwealth and read Staten's testimony at the preliminary hearing into the record. The Commonwealth then called Detective Fetters to testify about Staten's statement to police. As part of his testimony, Fetters read part of the statement into the record, and the statement was then admitted in full as an exhibit.

---

[2] We surmise from the record that this was in return for the Commonwealth's agreement not to pursue the death penalty.

5

The Medical Examiner's report, admitted at trial, corroborated Staten's statement to police that Kelly shot the victim multiple times at close range. The report indicated five gunshot wounds on the victim's body, one of which "had soot and stippling around it, which shows evidence that [it] was a close-range firing." A. 102.

On the second day of trial, the prosecutor told the Court that the Commonwealth had "another eyewitness." A. 118. He began to identify the witness as "the first cousin of the . . . ," but Kelly's counsel interrupted to object. *Id.* The prosecutor added, "[a]nd if [Kelly's counsel] knows which spider is sitting down beside little Miss Muffett scaring her away, I would appreciate knowing." *Id.* Later, the Commonwealth told the Court that "the other eyewitness gives the same motive [as Staten]." A. 122. The next day, Detective Edward Rocks testified that Staten provided information that led him to "undertake the search and location of a person known as 'Nay-Nay.'" A. 138. He also testified that "she indicate[d] that she was an eyewitness in this case." *Id.* Rudenstein did not object to these statements. The defense did not call any witnesses.

On the final day of trial, the Commonwealth asked for Wharton's name to be called out in open court, and when no one responded, the prosecutor noted that she had not responded to a bench warrant. At closing arguments, Rudenstein reminded the Court that there was no evidence incriminating Kelly except for "an out-of-court statement, not video'd, not audio'd, not under oath and completely disavowed under oath." A. 158. In its closing, the Commonwealth stated: "And a witness named Nay-Nay had to see it, and she was running behind him saying, what are you doing." *Id.* Kelly's counsel objected, but Judge Hughes responded that Staten's statement about Ms. Wharton's presence at the

6

crime scene "is what it is, and it does clearly indicate that there were other people on the street who refused to come into the courtroom." *Id.*

Judge Hughes then announced her verdict that Kelly was guilty of first-degree murder and violation of the Uniform Firearms Act. She sentenced Kelly to life in prison for the murder conviction. Rudenstein filed a notice of appeal and a 1925(b) statement contending that the conviction was not supported by sufficient evidence. The Trial Court filed its 1925(a) opinion, in which it noted in the facts section that Staten observed Wharton running toward Kelly and yelling, that she was reluctant to come forward, and that she could not be located by the police. The Trial Court concluded that the verdict was not against the weight of the evidence because Staten's inculpatory statement was admissible and corroborated by the medical examiner's report.

*e. Direct Appeal*

On direct appeal, Kelly retained new counsel, Norris Gelman. As relevant for our purposes, Kelly again argued that the Trial Court erred in admitting Staten's preliminary hearing testimony because he did not have a full and fair opportunity to cross-examine Staten. The Superior Court denied his claim as meritless, noting that, although Kelly "strategically decided to limit his cross-examination because Mr. Staten had recanted his earlier police statement," this did not affect his opportunity to cross-examine Staten. A. 60. The Pennsylvania Supreme Court denied allocator.

*f. State Post-Conviction Review*

Kelly next filed a petition under the Pennsylvania Post-Conviction Relief Act ("PCRA"). He argued that trial counsel was ineffective for not challenging the

7

conviction on due process grounds because it did not rest on any sworn testimony. His petition was denied, and the Superior Court agreed with the Trial Court's opinion that the ineffectiveness claim lacked merit because Pennsylvania precedents hold that admission of a prior inconsistent statement of a recanting witness does not violate due process.

g. *District Court*

Having been denied relief in state court, Kelly (still represented by Gelman) filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the Eastern District of Pennsylvania. He timely raised five grounds for relief, largely repeating his claims raised on direct appeal and PCRA review. These claims are not before us on this appeal.

Kelly then retained new counsel, Michael Wiseman. Wiseman filed a motion for leave to amend and presented new allegations of ineffective assistance of trial counsel (Rudenstein), as well as arguing that these claims were defaulted in state court because PCRA counsel (Gelman) was ineffective.

The District Court referred his case to Magistrate Judge David R. Strawbridge, who issued a Report and Recommendation ("R&R") recommending that the claims be denied as either meritless or defaulted.[3] Magistrate Judge Strawbridge also recommended denying leave to amend to add the new claims, rejecting Kelly's relation-back and equitable tolling theories. Kelly objected to the R&R. Neither the Magistrate Judge nor the District Court held an evidentiary hearing.

---

[3] Throughout this opinion, when we refer to the District Court making findings of fact, we are referring to the Court adopting the Magistrate Judge's R&R making the findings.

8

The District Court overruled Kelly's objections, approved and adopted the R&R, denied his § 2254 petition in its entirety, and denied the motion to amend to add the new claims. The District Court also did not issue a Certificate of Appealability.

*h. Appeal*

Our Court granted a Certificate of Appealability on two issues: (1) whether the District Court erred in denying Kelly's claim that counsel performed ineffectively by failing to reassert his Confrontation Clause argument after Detective Fetters disclosed potential impeachment evidence at trial, and (2) whether the District Court erred in denying Kelly's claim that his counsel performed ineffectively by "failing to object to testimony and argument concerning a second eyewitness." A. 3.

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, because this appeal is from a final decision of the District Court, and pursuant to 28 U.S.C. § 2253, because this appeal is from the District Court's final order in a 28 U.S.C. § 2254 habeas corpus proceeding.

We review a District Court's decision to deny a habeas petitioner's motion to amend a petition for abuse of discretion. *Riley v. Taylor*, 62 F.3d 86, 89 (3d Cir. 1995). We may affirm on any basis supported by the record. *Helvering v. Gowran*, 302 U.S. 238, 245 (1937).

## III. DISCUSSION

Kelly argues that he is entitled to relief because his trial counsel was ineffective in two ways. First, in failing to re-assert a Confrontation Clause objection to the admission

of Staten's police statement and preliminary hearing testimony, and second, in failing to object to references to a second non-testifying purported eyewitness, Jeannine "Nay-Nay" Wharton. Because he filed his amended petition after the expiration of The Antiterrorism and Effective Death Penalty Act ("AEDPA")'s one-year statute of limitations, the District Court concluded that Kelly's two new claims were time-barred. He asserts this is reversible error.

Kelly does not contest that these two claims were filed well after AEDPA's one-year statute of limitations expired. Nonetheless, he urges us to use our equitable powers to toll the statute of limitations or to exercise Federal Rule of Civil Procedure 15(c)'s relation back provision in order to permit review.

We withhold judgment on Kelly's timeliness theories because we prefer to decide this appeal by assuming timeliness and reaching the merits.[4] Even if the Proposed Amended Petition were considered timely, we hold that relief is not warranted because Kelly's claims are procedurally defaulted, and *Martinez v. Ryan*, 566 U.S. 1 (2012) cannot excuse that default because his underlying ineffective assistance of trial counsel claims cannot establish the cause necessary to overcome the procedural bar.

*a. Legal Framework*

Kelly's claims are procedurally defaulted. To prevail, he would have to persuade us to excuse the default by showing that his underlying ineffective assistance of trial counsel claims have merit under *Strickland*'s stringent test, and that his PCRA counsel

---

[4] While the District Court did not address the merits, we can resolve this case on appeal on the basis of any ground suggested by the record.

10

was similarly ineffective in failing to raise them. We need not consider PCRA counsel's alleged failings because at bottom, Kelly's ineffective assistance of trial counsel claims are not persuasive.[5] We begin by explaining the framework for our analysis of the two claims.

Because Kelly failed to identify his two new claims in his PCRA petition, he is now time-barred from raising them in the Pennsylvania courts. *See* 42 Pa. Cons. Stat. § 9545(b). "Ordinarily, this procedural default would constitute an adequate and independent state law ground for the Superior Court's decision and would bar our review." *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014). But Kelly urges us to excuse this default under *Martinez,* because he alleges PCRA counsel's failure to raise these claims *itself* constituted ineffective assistance of counsel.

Procedural default may only be excused when the petitioner can establish both "cause for the default" and "actual prejudice" resulting from the failure of the state court to hear the claim. *See Coleman*, 501 U.S. at 750. *Martinez* provides a narrow avenue to show "cause," and applies only where PCRA proceedings would be the first opportunity to pursue an ineffective assistance of trial counsel claim—as they are in Pennsylvania. *See Martinez*, 566 U.S. at 9. Failure of collateral attack counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding may establish cause under *Martinez* if: "(1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland* and (2) the underlying ineffective

---

[5] Even if we were to assume the claims were not procedurally defaulted, Kelly would encounter the same bar to relief because his underlying claims do not convince us.

11

assistance of trial counsel claim is 'a substantial one,' which is to say 'the claim has some merit.'" *Glenn*, 743 F.3d at 410 (quoting *Martinez*, 566 U.S. at 14).

To find in Kelly's favor, we would first need to find that Rudenstein's failures at trial were "so serious" that he "was not functioning as the 'counsel' guaranteed" to Kelly by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard is "highly deferential" to defense counsel, as "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 689–90. In addition to showing that Rudenstein's performance at trial was "deficient," Kelly must also show prejudice, that is, that Rudenstein's errors were so serious as to deprive Kelly "of a fair trial, a trial whose result is reliable." *Id.* at 687.

Because neither of Kelly's underlying ineffective assistance of trial claims meets *Strickland*'s harm and prejudice prongs, nor rises to the level of "substantial" under *Martinez*, we conclude their default was not excused.[6] We examine each claim in turn.

*b. Confrontation Clause Claim Following Fetters' Changed Testimony*

Kelly alleges that Rudenstein performed ineffectively by failing to reassert a Confrontation Clause objection to the admission of Staten's statement and testimony after Detective Fetters changed his testimony and thus presented new impeachment evidence mid-trial. Even if Kelly could establish that counsel's performance was deficient, he

---

[6] The District Court did not discuss the merits of the two new claims and instead denied leave to amend by rejecting Kelly's arguments that it should consider the claims timely filed despite AEDPA's bar. Because we assume timeliness in order to reach the merits, we do not address the District Court's analysis of the timeliness theories.

cannot show prejudice because Staten already disclosed the relevant impeachment evidence in his recantation. Kelly's underlying ineffective assistance claim therefore cannot overcome procedural default.

The question at the heart of Kelly's claim is whether he had a full and fair opportunity to cross-examine Staten. If he did not, admitting Staten's statement and testimony—the Commonwealth's only substantive inculpatory evidence—would have raised Confrontation concerns that counsel arguably should have re-asserted.[7] *See generally Crawford v. Washington*, 541 U.S. 36 (2004).

Kelly argues that his opportunity to cross-examine Staten was hamstrung by Fetters' inaccurate testimony at the preliminary hearing. At that time, Fetters said he did not know that Staten had a brother or why Staten was at the station in the first place. In contrast, two-and-a-half years later at trial, Fetters said he knew *before* interviewing Staten about the charges involving his brother. The Commonwealth characterizes this as a forgotten "minor detail." Commonwealth Br. at 50. Kelly counters that knowing this would have enabled him to more thoroughly impeach Staten at the preliminary hearing. We remain unconvinced.

In light of Staten's recantation and assertion at the preliminary hearing that homicide detectives had pressured him to give a statement to help his brother, we do not

---

[7] We note that the Trial Court told Kelly's counsel "[W]e will maintain [the Confrontation objection] as an ongoing objection pending us looking more carefully at what Pennsylvania has specifically said . . . ." A. 106. This may further explain why Rudenstein did not renew his objection, and why his choice was reasonable under the circumstances.

13

see what else counsel could have accomplished on cross-examination had he known that Detective Fetters would later confirm that Staten was brought in to talk about his brother. Nor does Kelly identify any significant areas of impeachment that were not already covered in cross-examination. Kelly urges that "preliminary hearing counsel could have re-called Staten to testify in more detail about detectives' interactions with him relating to his brother." Opening Br. at 8. And Detective Fetters' changed testimony might have made it more likely that the factfinder would believe Staten's explanation for recanting. But that concerns the weight of the evidence, not the adequacy of Kelly's opportunity to cross-examine Staten. And "[a]s the Supreme Court has previously stated, 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Rolan v. Coleman*, 680 F.3d 311, 327 (3d Cir. 2012) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

Nor can we say, bearing in mind Judge Hughes' statements to counsel, that Rudenstein's choice not to reassert a Confrontation challenge prejudiced Kelly. To show prejudice, Kelly must establish a "reasonable probability that, but for [Rudenstein's] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Judge Hughes told Rudenstein "I understand, you know, what you're looking for. You want to know the day he was in homicide if he talked about his brother," and "You're trying to impeach Mason Staten's motive for providing this statement." A. 133. These statements confirm that the factfinder already had the information about Staten's brother. Under the circumstances, we fail to see a reasonable

14

probability that, but for Rudenstein's choice, the Trial Court would not have found Kelly guilty of first-degree murder. Kelly therefore has failed to show *Strickland* harm or prejudice, and *Martinez* will not excuse this claim's default.

*c. Confrontation Clause Objection to References to Jeannine Wharton*

Kelly also alleges that his trial counsel should have raised Confrontation Clause objections to testimony and argument about Wharton, a non-testifying, purported second eyewitness to the crime. He contends that Rudenstein should have prevented Judge Hughes from hearing any information about Wharton, who was not subject to adversarial examination. He also identifies two reasons why this failure was prejudicial. The first is an issue of proportion: the Commonwealth's case was sparse, given Staten's recantation and unavailability. And second, Kelly contends the Trial Court improperly relied upon Wharton's existence and predicted inculpatory testimony in finding him guilty.

This claim, too, cannot establish the cause necessary to overcome procedural default. We have held that the Confrontation Clause is violated "when a prosecutor informs the jury that there is a witness who has not testified, but who, if he had testified, would have given inculpatory evidence." *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996). But comments to the judge during logistical discussions would not be barred by the Confrontation Clause because they were not being presented for the truth of the matter asserted. *Crawford*, 541 U.S. at 59 n.9.

Here, Detective Rocks testified at trial that Wharton "indicate[d] that she was an eyewitness in this case." A. 138. And the Commonwealth made repeated statements during discussions with the Court of the order of evidence to be presented, to the effect

15

that Wharton's testimony would inculpate Kelly. At trial, Kelly's counsel objected to the admission of the portion of Staten's statement that referred to Wharton "yelling at [Kelly], what are you doing, what are you doing." A. 123. Judge Hughes overruled his objection. Moreover, at closing arguments, the Commonwealth referred to Wharton, but Kelly's counsel again objected. Judge Hughes responded "[Staten's] statement is what it is, and it does clearly indicate there were other people on the street who refused to come into the courtroom. It absolutely indicates there were other witnesses to this crime, but we can keep going." A. 158.

The sole unobjected-to reference at trial, made by Detective Rocks, was to the effect that police located Wharton and that she indicated she was an eyewitness in the case. It did not state whether her testimony would inculpate Kelly. On this record, we cannot say that Rudenstein was ineffective to the point of depriving Kelly of his constitutional right to counsel when he failed to object to Rocks' recounting of his investigation. Perhaps another lawyer might have objected, but Rudenstein's choice does not rise to the egregious attorney error *Strickland* prohibits.

The prejudice question, however, is a bit closer, given Judge Hughes' references to Wharton in her 1925(a) opinion. Nevertheless, we remain unconvinced that the outcome of the trial would have been different had Rudenstein objected to Rocks' statement or raised more objections to references to Wharton during other discussions with the Court.

It is true that a defendant's Confrontation Rights may be violated even if the offending information is not admitted into evidence. *See Douglas v. Alabama*, 380 U.S.

16

415, 419–20 (1965) (reading the confession of an accomplice who was asserting the right against self-incrimination to "refresh [his] recollection" violated the Confrontation Clause by creating an inference for the jury that he had indeed made the statement).  But trial judges "are presumed to know the law and apply it in making their decisions." *Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled in part on other grounds*, *Ring v. Arizona*, 536 U.S. 584, 589 (2002); *cf. Johnson v. Tennis*, 549 F.3d 296, 300 (3d Cir. 2008) (holding that the *Bruton* rule is inapplicable in bench trials because judges, unlike juries, are presumed to disregard improper testimony).

Kelly makes much of the fact that Judge Hughes said, in delivering the verdict: "in a perfect world, I do wish Nay-Nay had come in."  A. 159.  Context reveals, however, that Judge Hughes was lamenting the Commonwealth's scant evidence, not relying on Wharton's existence (or presumed testimony) to bolster her verdict.  Indeed, Judge Hughes went on to say "I wish the other citizen [the Commonwealth] was looking for had come in.  Really, really wish from the bottom of my heart Mason Staten were alive. I wish a lot of things.  *But I'm confined to the record that was created before me and the case law that governs that record*."  *Id.* (emphasis added).

Kelly also directs our attention to Judge Hughes' reference to Wharton in her opinion on his motion to set aside the verdict as against the weight of the evidence. According to Kelly, this means she improperly relied on extra-record evidence to find him guilty.  Judge Hughes did refer to Wharton in the facts section of her opinion.  But she cited three pieces of evidence from the record:  the admitted statement of Mason Staten containing his observations of Wharton, the Commonwealth's statement that she

17

did not want to testify, and that a bench warrant had been out for her but she did not come to trial. And in her analysis of the evidentiary support for a guilty verdict, Judge Hughes mentioned Wharton only once: "Although one witness screamed at the appellant as he continued to shoot his gun, he did not leave the scene until it was apparent that Steven Clark was fatally wounded." A. 73.

These mentions do not undermine our confidence in the outcome of Kelly's trial or in Judge Hughes' representation that the verdict was "confined to the record." A. 159. To justify her verdict, Judge Hughes relied on Staten's statement and preliminary hearing testimony, as well as the medical examiner's report. We read the reference to Wharton in her analysis as merely adding a dramatic effect to her statements condemning Kelly's actions, not as a fact she relied upon in reaching the verdict.

\*\*\*

Kelly cannot meet either prong of *Strickland* for his either of his new Confrontation claims, and they are not "substantial" for purposes of *Martinez*. We thus conclude that Kelly cannot prevail on either of his claims.

## IV. CONCLUSION

For the foregoing reasons we will affirm the District Court's order denying Kelly leave to amend his Petition for a Writ of Habeas Corpus.

18